# ROCKINGHAM.

## JULY TERM, 1851.

---

## KNOWLES & a. v. DOW.

A valid custom must have existed from time immemorial; but a regular usage for twenty years, unexplained and uncontradicted, is sufficient to warrant a jury in finding the existence of an immemorial custom.

A customary right to do any thing upon the land of another is a right adverse to that of the owner of the soil, and must have been acquiesced in by him, and its existence must not have been the subject of contention and dispute. It must be certain and definite, and must also be open and public.

Where a plea alleges a custom to haul sea-weed upon a certain close, it is not necessary to prove that the custom extends to the whole of the close.

A custom for the inhabitants of a town to haul sea-weed from the margin of the water and deposit it upon the close of the plaintiffs, and afterwards to draw it away when convenient, is not void as being unreasonable.

To prove a custom for all the inhabitants of Hampton to deposit sea-weed upon the close of the plaintiffs, the defendant offered evidence that thirty of the inhabitants had done so for many years. *Held*, that this was competent evidence to be submitted to the jury to prove the custom.

A plea alleged a custom in the inhabitants of Hampton to deposit sea-weed upon the plaintiffs' close. The evidence was that only those inhabitants of Hampton exercised the right who lived at a convenient distance from the sea-shore. *Held*, that this was competent evidence of the custom.

A plea alleged a custom in the inhabitants of Hampton to haul sea-weed upon the plaintiffs' close, and there deposit it and afterwards to draw it away at their pleasure. The evidence was that when the inhabitants had got more than they wished to haul home, they left it upon the close, until it was convenient to remove it. *Held*, that there was no variance between the allegation and the proof.

Where the defendant pleaded a custom in the inhabitants of Hampton, and also a license to himself, evidence that the defendant with other inhabitants of Hampton went on the plaintiffs' land and deposited sea-weed there with the knowledge of and without any objection from the plaintiffs, is competent evi-

Knowles *v.* Dow.

dence, both of a custom in the inhabitants of Hampton, and of a license from the plaintiffs to the defendant.

Where, to an action of trespass *qu. cl. fr.* the defendant pleads a customary right in the inhabitants of Hampton to do the acts complained of, although in general an inhabitant of a place is not competent to prove a customary right in the inhabitants, whether he be not competent to prove the place where the alleged trespass was committed, *quære?*

Where a fact, which the defendant calls a witness to prove, has already been proved by the plaintiff, the admission of the witness is no cause for setting aside the verdict.

There is no practice in this State authorizing the court to set aside a verdict in part.

Where a case has been tried, and a verdict returned for the plaintiff, which has not been set aside, and then there has been another trial and a verdict for the defendant, the court will not set aside the second verdict and render judgment on the first if the motion for judgment is not made until after the second verdict is returned.

TRESPASS, for breaking and entering the close of the plaintiffs, situate in Hampton, and carrying away several loads of sea-weed and flats-weed, &c.

The writ was made returnable before a magistrate, and the defendant filed six pleas, upon which the action was transferred to this court for trial.

The first plea was, that the close was the soil and freehold of the State, and that the defendant, as a citizen of the State, did the acts complained of.

The second plea was, that the close was not the close of the plaintiffs.

The third was a plea of prescription in a *que estate.*

The fourth was a plea of a prescriptive right in the defendant and his ancestors to procure, &c., the sea-weed.

The fifth plea stated that " there now is, and from the time whereof the memory of man is not to the contrary, hath been, a certain ancient and laudable custom, used and approved of in the said town of Hampton, that is to say, that all of the inhabitants of the town of Hampton aforesaid, have, during all the time aforesaid, used and been accustomed to have, and of right ought to have had, and still of right ought to have, the liberty and privilege of hauling, with horses and carts, sea-weed and flats-weed

upon said close, and there depositing the same, and afterwards of taking and carrying away the same every year, and at all times of the year, at their free will and pleasure." It was then alleged that, at the several times when, &c., the defendant was an inhabitant of Hampton, that he entered upon the close for the purpose of hauling thereon and depositing sea-weed and flats-weed, the property of the defendant, and afterwards for the purpose of taking and carrying it away, &c.

The sixth plea alleged that the defendant did the acts complained of " by the leave and license of the plaintiffs, to him for that purpose first given and granted," &c.

Upon each of the pleas, issues to the country were joined, and under each issue evidence was introduced. The Court ruled that the defendant had offered no evidence competent to be submitted to the jury under the first four pleas, and the case went to the jury upon the fifth and sixth pleas. Both the issues under these pleas were found for the defendant, and a verdict was then taken for him. The plaintiff moves that it be set aside, because the custom alleged by the defendant in his plea is unreasonable. The plaintiffs offered evidence that they, and those under whom they claimed, had owned and occupied the *locus in quo* for more than thirty years, but it was not denied by them that the defendant had a right to procure sea-weed between high and low-water-mark. It appeared that just above high-water-mark there was an elevation, or range of low hills, called beach-hills or sand-hills, on which beach-grass grew, and which to some extent answered the purpose of protecting the marshes in their rear from being overflowed. It was upon that part of this range of hills which belonged to the plaintiffs, that the defendant claimed the right of depositing the sea-weed gathered by him between high and low-water-mark. To prove the existence of such a custom as is alleged in the plea, authorizing him so to do, he introduced as a witness, John Page of North Hampton, who testified that he had known nearly all the farmers about the centre of Hampton to get sea-weed, haul it on the beach-hill and leave it there when they had got more than they wished to haul home, until it should be convenient for them

33*

to remove it; that he had seen twenty teams there at once, and never heard of any objection to depositing the sea-weed there until the commencement of this suit, and that he had got sea-weed there with his father fifty years ago, but had got none for twenty-six years past; that he never heard any person say they had a right to deposit the sea-weed there, but they acted as if they had a right. The witness could recollect the names of only twelve persons from the west part of Hampton, whom he had seen gathering and depositing sea-weed there, and also of two persons from Hampton Falls, and stated that some persons from the west part of Hampton never went there at all, and that those living near the line of Exeter did not go there. David Page, of North Hampton, also testified that he never knew the plaintiffs to occupy the beach-hills except perhaps to place sea-weed there; that in the winter of 1816 and 1817, he was there, and was also there nearly every winter from 1828 to 1841, and that he had seen more than half the people from the east part of the centre of Hampton there, and he never knew any persons from west of the centre of Hampton shoot down sea-weed on the beach, and not many persons from the west part of the town. These persons he had seen getting sea-weed outside of the beach-hills east from the plaintiff's marsh, and when they had collected more than a load, they "shot down" the sea-weed on the top of the beach-hill. The witness remembered the names of thirteen persons, living east of the centre of Hampton, whom he had seen deposit sea-weed on the beach-hills, principally between the years 1828 and 1841, but some of them did so as early as the year 1816.

Upon the question of the custom, Josiah Page, a witness for the plaintiffs, upon his cross-examination, stated that everybody had deposited sea-weed on the beach-hills when they pleased; that this was done to keep it out of the way of the tide; that he had known a great many persons to do this, without objection, until the year 1845.

Joseph Philbrick, a witness for the plaintiffs, stated, on his cross-examination, that he had known the defendant and his father get sea-weed, and there were not many years in which he

had not seen the defendant deposit it on the beach-hill. He never knew the plaintiffs to occupy the beach-hills, except as other persons did.

The plaintiffs introduced James Lane, of Hampton, who testified that he never knew any persons from the north part of Hampton, to do so.

Samuel S. Page, a witness for the defendant, stated on his cross-examination, that he lived in the north part of Hampton; that he and his neighbors did not go to the beach-hills for sea-weed, because it was so far off; that the plaintiffs' father and grandfather occupied the marsh for fifty years; that he never knew them haul sea-weed upon the sand-hills, but that they had hauled thatch-weed upon the cedar-hills.

The plaintiffs moved to set aside the verdict, because there was no evidence competent to be submitted to the jury in support of the custom alleged, — there being no evidence of the origin or recognition of such custom in any way defining or limiting it to the people of Hampton, and no evidence of any claim of right peculiar to them, and there being evidence that a proportion of the citizens of Hampton, who used sea-weed as a manure, did not procure it, and use the plaintiff's close in the manner alleged, but procured it elsewhere, and there being no evidence that any person ever claimed any right under any such custom, or put any sea-weed on the plaintiff's close in the summer, but only in the spring, fall, and winter.

To prove the issues relating to the license, and the presumptive rights, the defendant introduced Uri Lamprey, an inhabitant of Hampton. It was necessary to locate the places where certain acts were done by the defendants, in order to prove the license and the prescription, and Lamprey's testimony went to locate them. The plaintiffs objected to Lamprey, as an incompetent witness to locate the places, because it was necessary to prove where the acts complained of were done, in order to show that the alleged custom extended over them; and thus Lamprey, by testifying in relation to the places, aided in proving the issue upon the plea of custom, in which he was interested as an inhabitant of Hampton; and also objected to Lamprey's testifying at

all, as to any acts done by the defendant or others, on the premises. But the Court permitted him to testify; and the places where the alleged trespasses were done, were also located by Bachelder and Leavitt, two of the plaintiffs' witnesses.

The plaintiffs moved the Court to rule that the evidence offered did not sustain the custom alleged, but varied from it, and that the custom was not made out unless the acts were done under a claim to do them by virtue of such a custom; but the Court declined so to rule.

The Court instructed the jury that the alleged custom, in order to be valid, must have existed from time immemorial; that the right must not have been interrupted, or discontinued, or abandoned, although the actual use and possession of it might have been discontinued for a period of time; that the custom must also be shown to have been peaceably acquiesced in, and the existence of it must not have been the subject of contention and dispute; that it must be certain and definite, and must be proved by witnesses who have had frequent and actual experience of it; that its existence might be presumed from a regular usage for twenty years, uncontradicted and unexplained, and from this the jury would be authorized to find the custom; that it was enough if the jury believed that the acts complained of, were done by virtue of an alleged custom belonging to the inhabitants of Hampton, although the defendant need not have made any public statement in words, that they claimed a right under a custom; that a customary right to do any thing on the land of another, is a right adverse to the rights of the owner of the soil, and must have been acquiesced in by him; that it could not be acquired secretly and without the knowledge of the owner of the land, but must be open and public, and must be evidenced by language stating the claim, or by acts notorious and unequivocal in their character; that it was unnecessary that all the inhabitants of Hampton should be proved to have exercised the alleged right; but if any indefinite number of the inhabitants had done so, declaring that they acted under a right, or doing acts notorious and unequivocal in their character, this was competent evidence for the consideration of the jury in de-

termining the question whether the alleged custom existed. To the above instruction the plaintiffs excepted ; and also excepted because the Court ruled that it was not necessary for the defendant to prove the custom to extend over the whole close of the plaintiffs, but that it was enough to show it to extend over that part where the acts were done, and because there was no evidence of any custom covering the whole of the plaintiffs' close. And the plaintiffs further excepted, because the Court declined to rule that the custom set forth in the fifth plea was larger or broader than the one attempted to be shown in evidence,— the former (as the plaintiffs alleged) being general and unlimited, while the latter was at most confined and limited to part only of the sea-weed and flats-weed that is obtained on the shore of the ocean opposite to the plaintiffs' close, and so was not sustained by the evidence.

In relation to the plea of license, the defendant, offered evidence tending to show that for twenty-five years past, in each season except the summer, he had got sea-weed and flats-weed, and hauled it to the beach-hills and deposited it there when he had more than a load, and that the plaintiffs were present while he did this, and made no objection ; that he and his father used carts to haul the sea-weed upon the beach-hills; and in the winter, when there was snow on the ground, and carts could not be used, he and his father were accustomed to leave the carts on the beach-hills without objection from the plaintiffs. The plaintiffs contended that, even if a license might be implied from evidence of this character, it had been revoked. Josiah Paige, a witness for the plaintiffs, testified that he heard of no objection to the deposit of sea-weed on the beach-hills until the year 1845 ; that about that time he worked there with the defendant, and the plaintiffs sent him a line informing him that he had trespassed. Thomas Leavitt testified that he was present at a meeting held at a school-house in Hampton, in the month of March, 1846, at which the defendant was also present. The object of the meeting was stated to be to see what could be done to prevent individuals from setting up private claims to the sea-shore, and to adopt some means to defend a suit brought by

the plaintiffs against one Jonathan Perkins. The witness stated to the meeting how far the plaintiffs alleged that their line extended, and that they claimed all the land south of it. It was declared in the meeting that the plaintiffs could not prevent people from coming there, and that they wished to keep everybody away, that they might have all the sea-weed that landed there. The defendant was town clerk of Hampton, and brought in some papers and read them. The witness stated at the meeting that the public had no right there, and that the plaintiffs had a lawful claim. Alfred J. Bachelder, a witness for the plaintiffs, testified that on the 5th of January, 1846, he was on the ground getting sea-weed, and that the plaintiffs and defendant were there also; that the plaintiffs pointed out to the defendant where his line was, and requested the defendants not to shoot down sea-weed upon beach-hill, because it injured it; and that the defendant said if that were his land he did not wish to go there. Some days afterwards the witness met the defendant on the land south of the plaintiffs' line, and the defendant said to him, "this is the Knowles's land." The witness replied, "that's what they claimed," — and the defendant then said, "they may keep us off from it if they can."

The Court instructed the jury, that evidence of the character above stated was competent to be considered and weighed by them as tending to prove a license, and that upon such evidence it was competent for them to find a license; that this license, however, might be revoked by the plaintiffs, and that the evidence was competent to prove a revocation; that if they found there was a license, they should inquire whether it had been revoked, and if they believed it had never been given or had been revoked, they should find the issue upon the sixth plea for the plaintiffs.

The plaintiffs moved to set aside the verdict, 1. because there was no evidence competent to be submitted to the jury in support of the plea of license.

2. Because no express license was proved, and because the acts submitted to the jury, as evidence from which a license might be presumed, were of a different character from those

alleged in the declaration and admitted by the pleadings, and therefore not competent evidence.

3. Because the acts alleged and admitted in the pleadings, were breaking, &c., and carrying away the property of the plaintiffs, and there was no evidence tending to prove any such license.

To this exception the defendant answered, that the writ does not allege that the sea-weed, &c., was the property of the plaintiffs, neither is it so alleged anywhere in the pleadings; that the breaking and entering is the gist of the action, and whatever answers that, as the defendant's pleas do in this case, answers the whole case.

4. Because the defendant cannot justify the acts complained of under the custom and under the license at the same time, these defences being inconsistent with each other; and the verdict finding both these issues for the defendant, is inconsistent and must be set aside.

5. Because neither of said pleas contains any denial or answer to more than one count in the plaintiffs' writ. If said pleas are regarded as answering both counts, then the acts charged in the second count are admitted; not being denied nor justified.

6. Because the former verdicts upon the said fifth and sixth pleas for the plaintiffs were never set aside, and no motion has ever been made to have them set aside, the case before transferred being upon the verdict on the second plea only.

To this exception the defendant answered, that the verdict upon the former trial was entirely set aside; that upon the fifth and sixth pleas, it was for the plaintiffs, upon the ruling of the Court that the custom must cover the whole of the close; that this ruling was adjudged wrong, and consequently every thing resting on it was incorrect and set aside; that this exception came too late, for the plaintiffs having gone through the whole trial, and acted upon the ground that the entire verdict was set aside, cannot now say that such was not the case, and that if the verdict should be set aside on the last two issues, according to the plaintiff's motion, it should be set aside altogether.

*Christie,* and *French,* for the plaintiffs.

I. There was no evidence adduced by the defendant competent to prove the custom alleged.

1. Every use or enjoyment of an easement in the land of another is *presumed* permissive.

To be evidence in support of a custom or prescription, such enjoyment must be under an express *adverse* claim, or accompanied by acts in their character *adverse.* Here is no pretence of express claim of right, and the acts proved are not in conflict with any use the plaintiffs ever made of their land, and not therefore in themselves evidence of an adverse claim.

They are similar in their nature to the common practice of hunting game in the woods, in this State, and it is believed that no amount of proof of such practice, would have any tendency to establish a legal right. *Lund* v. *Parker,* & *a.* 3 N. H. Rep. 49; 2 Greenl. Ev. § 539; *Arnold* v. *Stevens,* 24 Pick. 110.

2. There is no evidence of any custom used or recognized *peculiar to the inhabitants of Hampton, as such.*

The defendant called but two witnesses to prove the custom alleged, and by them it appears that most of the inhabitants of Hampton did *not* use any such custom, and that the inhabitants of another town participated in the practice. There is nothing in proof to give character to the use. Every act done tends as much to prove a custom for the inhabitants of the county, as of Hampton, and as much to prove a presumptive personal right, as either.

3. The proof varies from the allegation in the plea, in several points.

The custom pleaded is general, to haul sea-weed, &c., without limit as to the quantity or place of procuring.

The proof by both witnesses is of a *restricted* usage, to haul only what they got "more than a load," which may be but an occasional use.

It is restricted also to the sea-weed, &c., procured "outside of the beach-hills, east from the plaintiff's marsh," which may be very different from a right to make the plaintiffs' land the place of deposit for weed procured along the whole coast. The defend-

ant " claimed the right of depositing the sea-weed gathered by him *between high and low-water-mark.*" The case so finds, and this is a variance from the plea.

The custom must be proved strictly, as laid. Starkie's Ev. Pt. 4, 457; *Wilson* v. *Page*, 4 Esp. C. 71; *Drewell* v. *Fowler*, 3 B. & Ad. 735; 1 Bing. 217.

II. The Court erred in their instruction that it was not necessary for the defendant to prove the custom to extend over the whole close.

Perhaps a plea of a custom, as to the part of the close where the trespass was committed, would have been sufficient, but a plea as to the *whole*, and proof as to *part* is bad. It is a variance; the extent of territory to which the custom applies being part of the description of the custom, which must be alleged with certainty, and proved as alleged. Stark. Ev. Pt. 4, 1211; *Morewood* v. *Wood*, & *a.*, 4 Term Rep. 157; *Simpson* v. *Coe*, 3 N. H. Rep. 13; Angel on Tide W. 275.

Again, the record establishing this custom would be conclusive evidence of its existence as pleaded, between other parties claiming to use it. Greenl. Ev. § 405. *Sargent* v. *Gutterson*, 13 N. H. Rep. 472. So that we should have the absurd result, that the judgment here would be conclusive evidence of a custom attached to the plaintiffs' large tract, when no evidence was ever adduced or held essential to establish the facts so conclusively proved — the only mode yet discovered of proving facts without evidence.

III. The verdict is erroneous on both issues found for the defendant, because the Court did not instruct the jury as to the *legal quality* and *effect* of the evidence.

The proof attempted was by bare unqualified use; and the jury were allowed, without proof, to give a legal quality to the acts done, to find them to be in their nature *adverse*, and by the inhabitants of Hampton *as such*, under a claim of custom, and to find them to be permissive, and so proof of a license. The two pleas, if not inconsistent, in themselves, cannot in their nature be supported by precisely the same facts, or by proof of acts having as evidence a like legal tendency.

The acts of entering and taking sea-weed, &c., by the defendant and others, with the knowledge of the plaintiffs, have a legal quality as evidence. They are, as matter of law, either adverse, or permissive, and cannot be both ; and the Court, and not the jury should determine which it may be. The legal effect of the facts proved, is for the Court and not for the jury. Stark. Ev. Pt. 3, 422.

IV. The verdict upon the plea of license should be set aside, because of the admission of Lamprey's testimony.

He was interested in the custom and clearly incompetent on that issue. 1 Greenl. Ev. § 405 ; 9 Sheply, 350 ; 19 Pick. 191 ; 13 N. H. Rep. 472.

It would seem, that he cannot be a witness at all if interested in the *cause*. *Parker*, C. J., 12 N. H. Rep. 313.

If he may testify as to one issue, he must surely be limited to facts, which have no bearing on the one in which he is interested. In the view taken by the Court at the trial, it was essential to the defendant to locate the acts complained of, upon the part covered by the custom, as well as by the license implied from use. Lamprey had a direct positive interest to procure a verdict establishing the custom, and for that purpose to locate the acts on the part to which the custom applied. The custom as to part being proved, and the custom and license applying to the same part, he had a disqualifying interest to locate the acts there.

The fact that the plaintiffs' witnesses also located the trespasses is immaterial. Lamprey was first called, being a witness for the defendant, on whom was the affirmative, and the exception was then well taken as to him. And, besides, it does not appear that they agreed in the location.

V. There was no evidence competent to prove the *license*.

The plea admits the acts alleged in the declaration. The allegation that the defendant broke and entered, and carried away sea-weed, is an allegation that he carried away the plaintiffs' property ; possession being evidence of ownership, and the plea is a *conclusive* admission of the facts of the plaintiffs' property.

The defendant claims only under a license to haul off weed previously deposited there by himself, which could not, if

proved, justify the acts alleged, if our view of the allegation be correct.

But if the law does not presume the weed on our close to be the plaintiffs, it surely is not presumed to be the defendant's, and to have been deposited there by himself, and there was no evidence offered by him at the trial tending to prove those facts ; so that if the license as claimed were proved, the defendant has failed to show an entry in accordance with it, and so is a trespasser. He claimed no right to take our weed, or that of a stranger, or even his own, unless deposited there by himself, under his usual practice.

Again, there was no evidence offered that the defendant had ever *hauled away* any weed, but only that he had hauled and deposited it there, which has no legal tendency to prove a license to remove it.

Many persons would very quietly submit to having manure hauled on to their land, who would decidedly object to its removal.

VI. Neither plea answers the whole declaration, which consists of two counts, *each* charging the breaking and entering and carrying away ten loads of sea-weed and ten loads of flats-weed.

The pleas justify only as to what is charged in one count.

VII. The former verdict for the plaintiffs on the fifth and sixth issues remain, and the plaintiffs are entitled to judgment on it. The records of this Court show that the *case* transferred on the former trial, was raised upon questions on the motion of the plaintiffs to set aside the verdict on the second issue only. The action itself was not transferred, and could not be, under the Statute in force. Rev. Stat. Chap. 172, §§ 7, 8, 9. Neither this Court, nor the Court below, has authority to set aside any verdict, except on some exception or motion of a party aggrieved.

It will not probably be admitted by the defendant that, on the case at bar, the verdict must be set aside on both issues if either is erroneous.

It is not true, as the defendant has suggested in the case, that this Court adjudged that the ruling on the former trial, that the custom must cover the whole close, was erroneous. The presid-

ing justice of the Court below, did so rule, and a verdict on that plea was rendered for the plaintiffs, and no exception was taken. The plaintiffs had a verdict in their favor, on five of the six issues, and the *case* sent up will show, that no question was raised on either of the five.

What the defendant means by the suggestion that the verdict on the plea of license " was for the plaintiffs on the ruling of the Court, that the custom must cover the whole close," is not very apparent.

We also contend that the custom as stated is not reasonable; and if it be unreasonable, it cannot be sustained.

*Emery* and *Marston*, for the defendant.

I. The custom is reasonable — is necessary for the enjoyment of the right to take sea-weed — is for the good of all the inhabitants of Hampton, and is injurious to no one. It is such a custom as Lord Mansfield said, in *Butter* v. *Heathby*, 3 Burr. 894, " very slight evidence is sufficient to prove."

Acts which by repetition establish a custom are at first permissive, and being continued time out of mind, without interruption, obtain the force of law. 2 Jacobs's Law Dic. 172, Custom; Co. Litt. 114.

The evidence is that the inhabitants of Hampton have done the acts which they claim a right to do by virtue of the custom, for a great length of time, without interruption, *acting as though they had a right.*

Long continued and uninterrupted exercise of the right by the inhabitants of Hampton, is surely evidence, and the best evidence the nature of the case admits of, to prove that the right is peculiar to them.

See opinion of *Wilde*, J., in *Coolidge* v. *Leonard*, 8 Pick., 512. The fact that a stranger who had no right, sometimes deposited sea-weed on the *locus*, cannot affect the right of the inhabitants of Hampton to do the acts justified.

A regular usage for twenty years, unexplained and uncontradicted, is sufficient to warrant a jury in finding the existence of an immemorial custom. *Rex* v. *Joliffe*, 2 B. & Cress. Rep. 54. In

this case, the learned judge told the jury that slight evidence of the custom set up, if uncontradicted, became cogent proof, and this ruling was fully sustained by the court, after argument. *Gray & al.* v. *Bond & al.*, 1 B. & Bing. 667. Mathews's Presumptive Ev. 299 to 316, or 313 to 332, Am. Ed.

A custom must be proved as laid, substantially. The *apex juris* is not to be laid hold on.

In *Soane* v. *Ireland & al.*, 10 East, 229, a custom was alleged that A was seized of a manor, and that he and all those whose estates he has in 'said manor have immemorially, &c. And the allegation was held to be sustained by proof of seisin of a *quondam* manor which had ceased. *Moor* v. *Mayor of Hastings*, 2 Strange, 1070.

It is objected that the custom pleaded is general as to quantity and place of procuring, and that the proof is of a *restricted* use.

The plea is of a right to deposit sea-weed and flats-weed, and the proof is of a custom to deposit sea-weed and flats-weed. The amount or place of procuring is of no consequence.

The claim is, and the proof is, of a custom to deposit such and such quantity as it is convenient and desirable to deposit there.

II. It is sufficient to prove the custom in that part of the close where the trespass was actually committed.

It is so where issue is taken on the following pleas: Close, not the property of the plaintiffs. *Liberum Tenementum.* Right of common. Custom. Archibold's N. P. 440, 442, 451, 456 ; 3 Stephens's N. P.

The words, " the said close in which," &c., have been settled to mean only the particular place in which the trespass was done, and the defendant may so apply it. *Bassett* v. *Mitchell*, 2 B. & Ad. 99; *Richards* v. *Peake*, 2 B. & Cres. 918; *Tapley* v. *Wainwright*, 5 B. & Ad. 395, are cases exactly in point.

The record will, indeed, be proof of the existence of the custom, but not that it extends over the whole close described in the declaration. It must be shown, by proof, which part of the close the custom applies to.

See the opinions of Lord *Tenderden* and Mr. Justice *Littledale*, in *Bassett* v. *Mitchell*, 2 B. & Ad. 99.

34 *

III. The pleas of custom and license are not inconsistent. The defendant might have a right adversely as an inhabitant, and he might have a license to do the very same act.

Surely it was competent for the jury to find a license from the evidence offered.

Where issue is joined on the plea of license, the plantiffs connot prove a revocation; that must be replied specially. 1 Chitty, Pl. 596; 1 Saund. Rep. 300, note 3; *Rex* v. *Joliffe,* 2 B. & Cres. 54.

The question as to the custom, was, upon the evidence, properly left to the jury. *Gray & al.* v. *Bond & al.,* 2 B. & Bing. 667; *Campbell* v. *Wilson,* 3 East. 294; *Yard* v. *Ford,* 2 Saund. Rep. 175, b. part of note 2; *Keymer* v. *Summers,* Bull. N. P. 64.

IV. Lamprey testified as to the license, not as to the custom.

The location of the trespass was not in dispute. The witnesses on both sides agreed in that particular, and the location was virtually admitted by the plaintiffs. Hence his evidence, if incompetent, furnishes no ground for a new trial. *Wiggin* v. *Damrell,* 4 N. H. Rep. 69.

No direct license was proved. Defendant contended that the license was to be inferred from proof that defendant had many times done acts similar to those which constituted the alleged trespass, and in the same place; and hence the necessity of locating the place of the alleged trespass, and of calling Lamprey as a witness. He was called for this purpose and no other, and testified to no facts affecting the custom. As the place of the alleged trespass was located by other witnesses, his testimony, if incompetent, did no injury to the plaintiffs, and therefore furnishes no ground for a new trial. *Wakefield* v. *Alton,* 3 N. H. Rep. 378.

The tendency of recent decisions and of recent legislation, has been to remove rather than enlarge the rule excluding witnesses on the ground of interest.

Besides, Lamprey had no interest to establish the fact that the trespass was done where the custom appeared.

*If* the trespass was done there, he, in common with the inhabitants of Hampton, had an interest in establishing the custom;

but it was of no interest to Lamprey that this defendant should have committed trespasses *where* he could justify them under the custom. Upon the issue of license, then, he was competent, although there was another issue in the case. *Pearce* v. *Lodge*, 12 Moore, 50 ; *Doe* v. *Teage*, 5 B. & Cres. 335.

V. The arguments and suggestions of the plaintiffs, under the fifth head of their discourse, are all answered by a reference to the familiar rule of law, that the breaking and entering is the gist of the action, and whatever answers that is an answer to the whole declaration. *Dye* v. *Leatherdale*, 3 Wilson, 22 ; *Taylor* v. *Cole*, 3 D. & E., 292 ; 1 Archibold's N. P. 435.

VI. The plea is to the declaration. Of course it is to all the counts, as it is applicable to all.

But if this mode of pleading is open to objection, it should have been demurred to. Joining issue on the plea is an admission that there is but one cause of action.

In trespass, the breaking and entering is the gist of the action, and a plea, justifying the breaking and entering, answers the whole declaration. *Dye* v. *Leatherdale*, 3 Wilson, 22 ; *Taylor* v. *Cole*, 3 D. & E. 292 ; 1 Archibold's N. P. 435 ; 1 Saund. Rep. 27, note 3 ; 1 Chitty, Pl. 414.

VII. The suggestion is new, that when a verdict is set aside and a new trial granted, it is as to part of the case only. A verdict is an entirety.

There may be several findings in one verdict.

When a new trial is granted, it is of the cause.

The finding of the jury on the former trial, that the close mentioned in the declaration was not the close of the plaintiffs, was decisive of the case and rendered the other issues immaterial. It was not necessary that there should have been any finding at all on the other issues. *French* v. *Hanchett*, 12 Pick. 15.

And, in fact, there was no finding on any other issues; the Court ruling for the purposes of the trial, that there was no evidence to support the other pleas.

GILCHRIST, C. J. The custom alleged is that the inhabitants of Hampton have had, from time immemorial, the liberty and

privilege of hauling sea-weed and flats-weed upon the close, and there depositing it, and afterwards of carrying it away at their pleasure.

It is said by the plaintiffs that the custom, as alleged, is unreasonable.

In the case of *Tyson* v. *Smith*, 9 Ad. & E. 406, the custom was that every liege subject exercising the trade of a victualler, might enter on the plaintiffs' close at the time of certain fairs, and erect booths, stalls, tables, and posts, and continue them a reasonable time after the fairs. It was said by *Tindal*, Lord Ch. J., that a custom is " a usage which obtains the force of law, and is, in truth, the binding law within a particular district, or at a particular place of the persons and things which it concerns."

It must be reasonable ; " and this is a question which it belongs to the judges of the land to determine." The views of the Court are, that a custom is not unreasonable, merely because it is contrary to a particular maxim of the Common Law ; as the custom of gavelkind is contrary to the law of descent. Nor is it unreasonable because it is prejudicial to the interests of a private man, if it be for the benefit of the commonwealth ; as the custom to turn the plough upon the headland of another, in favor of husbandry, or to dry nets upon the land of another, in favor of navigation.

But a custom injurious or prejudicial to the many, and beneficial only to some particular person, is repugnant to the law of reason. But the present custom is in fact in favor of the many, and the only party against whom it is set up, and by whom it is now opposed, is the lord of the manor.

It is not void as being against law ; and if alleged to be void, because inconvenient in a high degree in its enjoyment, and therefore unreasonable, the judges must look to the probabilities of the case, and be satisfied that the inconvenience is real, general, and extensive, before they hold a custom bad upon that ground which a jury have found to exist and to have been acted upon from beyond the time of legal memory. Upon these grounds the Court of Queen's Bench held that the custom in the case cited was not unreasonable.

In the case of *Bradbee* v. *Christ's Hospital*, 4 Mann. & Gr. 714, it was held, that a custom to erect a *hoarding* (which is a fence inclosing a house and materials, while builders are at work) so as to obstruct a part of a public way, for the purpose of building or pulling down a house, is not unreasonable. The hoarding, it is said, may be necessary for the protection of the public.

In *Leuckhart* v. *Cooper*, 3 Bing. N. C. 99, the Court held a certain custom unreasonable, because it was in restraint of foreign trade. In the case of *Blewett* v. *Tregonning*, 3 Ad. & E. 554, it was held, that sand blown by the wind from the sea-shore upon the plaintiff's close and there deposited, could not be taken from the close to be used as manure, by virtue of a custom, on the ground that the sand was a part of the soil, and inseparable from it; that there was no mode of ascertaining what was sand blown there from the sea-shore, and what was the original soil, and that there could not be a custom to take a profit *in alieno solo*. So, a custom to dig mines so as to injure the foundation of the plantiff's house, is unreasonable, and cannot be supported. *Hilton* v. *Granville*, 5 Ad. & E. N. S. 701. And many of the ancient cases referred to in the decisions cited, are collected in Bac. Abr. Customs, C.

In the present case, the custom alleged and substantially proved, was to deposit upon the beach or sand-hills of the plaintiffs the sea-weed gathered between high and low-water-mark. In this there seems to be nothing unreasonable. It is for the benefit of the inhabitants of Hampton. As *Tindal*, Lord Ch. J., said, "the custom is in favor of the many, and the only party against whom it is set up, and by whom it is now opposed, is the lord of the manor." It certainly is full as reasonable as the cases put by *Tindal*, Lord Ch. J., and stated in Bacon, as good customs. This exception, we think, must be overruled.

The plaintiffs contend that there was no evidence competent to be submitted to the jury in support of the custom alleged. It appears from the evidence of John Page, that twelve persons from the west part of Hampton, and two persons from Hampton Falls, had deposited sea-weed there. David Page testified that

more than one half the people from the east part of the centre of
Hampton, of whom he remembered the names of thirteen, and
" not many," which may fairly enough be construed to mean
some persons, from the west part of Hampton, had done so.
Josiah Page said that all persons had deposited sea-weed there
when they pleased, and that he had known a great many persons
to do it.

Here are thirty persons, whose names were given by the wit-
nesses, who lived in Hampton, and who had been known to haul
and deposit sea-weed upon the close. It is not argued, and
there is no evidence, that any persons but inhabitants of Hamp-
ton deposited sea-weed there.

In the case of *Roe* v. *Jeffrey*, 2 M. & S. 92, the question
was whether there was a custom within the manor to bar entails
by surrender. In support of the custom one instance only was
proved. Lord *Ellenborough* said, " the evidence unrestricted is
certainly evidence of a custom. It is true that one act undis-
turbed, does not make a custom, but it will be evidence of a
custom." In the present case there is proof that thirty per-
sons in Hampton were accustomed to deposit sea-weed. Now
the question is not whether some persons did not do so, but
whether there is or is not sufficient evidence to be submitted
to the jury from which they may find the existence of the cus-
tom. The fact that the witnesses saw persons there, principally
from certain specified parts of the town, merely shows what
would naturally happen, that those persons who lived nearest to
the place of getting the sea-weed would be the persons most fre-
quently to be seen there. We think the evidence was competent
to be submitted to the jury.

It is not necessary, in our opinion, that there should be evi-
dence of the limitation of the custom to the inhabitants of
Hampton, farther than was shown in the case. The proof is,
that the inhabitants of Hampton deposited the sea-weed. Josiah
Page testified that every body did so when they pleased. But
there is no proof that any persons, excepting inhabitants of
Hampton, had any inclination to do so; nor that the people of
the State generally, or of the county, were ever seen there.

The plaintiffs contend that the proof varies from the allegation, which is of the right of hauling sea-weed upon the close and depositing it, and afterwards of taking and carrying it away every year, and at all times of the year, at the defendant's free will and pleasure ; that the custom pleaded is general, to haul sea-weed without limit as to quantity, while the proof is of a restricted usage, to haul it only when the persons had got " more than a load."

John Page testified that the custom was to haul the sea-weed to the beach-hills, and leave it there, when they had got more than they wished to haul away, until it should be convenient for them to remove it. David Page said that when they had collected more than a load, they " shot down " the sea-weed upon the top of the hills. Now it appears that they deposited the sea-weed upon the top of the hill, when it was convenient so to do ; and the substance of the testimony of both the witnesses is, that when they had got " more than a load " to carry home, they left it. This is certainly no proof of a restricted usage.

It is said also that the custom is restricted, by the evidence, to sea-weed procured outside of the beach-hills east of the plaintiffs' marsh. But this is a mistake. Only David Page speaks of that place, and he was merely describing a place where he saw persons getting sea-weed, which certainly does not show any variance. He was not proving a custom to get it from that place ; and if he had been, the testimony of the other witnesses shows no restriction as to place, so that there still would be competent evidence to be left to the jury.

The plea is of a custom to deposit the sea-weed, and carry it away at all times of the year, at the defendant's free will and pleasure. The evidence of John Page is that they hauled it there, and left it when they had got more than they wished to haul home, until it should be convenient for them to remove it. This certainly shows the custom substantially as alleged.

There is no doubt on general principles that the custom must be proved as alleged. The right claimed must not be greater than the right proved. *Drewell* v. *Fowler*, 3 B. & Ad. 735. But if the right proved be greater than that claimed, it would

Knowles *v.* Dow.

seem not to be a variance, for that reason, notwithstanding the *nisi prius* ruling of Lord *Kenyon* in *Wilson* v. *Page*, 4 Esp. 71, cited by the plaintiffs. In that case, the defendant pleaded a custom for the tenants of a particular copyhold tenement to cut turf, and offered to prove a general usage for all the copyholders of the manor at large to cut turf, but without being able to prove the particular usage as to this tenement. Lord *Kenyon* held that he was confined to proof of the custom pleaded. But in *Milward* v. *Hibbert*, 3 Ad. & E. N. S. 120, the defendant pleaded a certain custom of trade at London. The Court held that there was evidence of the custom laid as a custom of London, though the witnesses said that such customs also prevailed in other English ports. Lord *Denman* said, " it rather appears to us that the custom might be properly described as a custom of trade in London, though it should also exist in other ports." In *Coolidge* v. *Learned*, 8 Pick. 504, it was held that the use of a place for sixty years, as a public landing-place would support a plea that the place was a landing-place for the inhabitants of Watertown. In *Soane* v. *Ireland*, 10 East, 259, proof of a *quondam* manor which had ceased to exist as a legal manor, and existed now only by reputation, was held sufficient evidence of an allegation that a party was seized of a manor of F. Lord *Ellenborough* said, " it would still be a manor by reputation, for this purpose, which will satisfy the allegation; and it was not necessary to prove it a continuing manor for all purposes." In *Ricketts* v. *Salwey*, 3 B. & Ad. 361, the declaration stated that the plaintiff was possessed of a messuage and land, and ought in respect of them to have a right of common. It appeared that the right of common was claimed by the plaintiff in respect of Ashford Hall, and the land usually held with it, on which issue the plaintiff failed. It appeared, however, that he was possessed of land within the parish, in respect of which he was entitled to a right of common, but there was no messuage upon this land; and it was held that this evidence was sufficient. Upon these authorities we think that the custom was proved by competent evidence.

The custom is alleged in the plea to be an immemorial custom,

and the evidence in this case shows that there had been an usage to procure the sea-weed for more than twenty years. This evidence is sufficient. A regular usage for twenty years, unexplained and uncontradicted, is sufficient to warrant a jury in finding the existence of an immemorial custom. *Rex* v. *Joliffe*, 2 Barn. & Cress. 54, *Gray* v. *Bond*, 2 Brod. & Bing. 667.

The Court ruled that it was not necessary for the defendant to prove that the custom extended over the whole close.

The plea states a custom to haul the sea-weed "upon said close," and the plaintiffs say the instruction was wrong.

In the case of *Richards* v. *Peake*, 2 Barn. & Cress. 918, to an action of trespass *qu. cl. fr.* the defendant pleaded a right of common of pasture in a down of which the close, &c., in the declaration mentioned was parcel, and justifying the trespass. Replication that the close in which, &c., in the declaration mentioned, was a certain close called *Burgey Cleave Garden*, &c. *Abbott*, C. J., said that the words "the close in which, &c., in the declaration mentioned," confine that allegation to the spot where the trespass was committed. In *Bassett* v. *Mitchell*, 3 B. & Ad. 99, to an action of trespass *qu. cl. fr.*, the plea was that the close in which, &c., was part of an allotment of six acres; which was denied by the replication. It appeared that the close set out was not all within the allotment, but that the part in which the actual trespass occurred, was within it; and it was held that the justification was made out. *Patteson*, J., said, "the words 'in the said close' do not mean every part of the close." *Tapley* v. *Wainwright*, 5 B. & Ad. 395; S. P., 1 Archb. N. P. 339. We think the ruling was correct.

The Court also ruled that a customary right to do any thing on the land of another, was a right adverse to the rights of the owner of the soil. This, however, was said only as introductory to the rest of the sentence — "and must have been acquiesced in by him."

The authorities are that a custom originates in permission. Bac. Abr. Customs. (A.) Still it is in its nature adverse. It is a right which the owner of the soil permits to be exercised upon his land; and he must have acquiesced in it in order to

give it validity ; because the custom must not have been the subject of contention and dispute. If it be not an adverse right, why need its exercise have been acquiesced in ? We do not see that it can be otherwise regarded.

The defendant here first set up the plea of custom. If he failed in proving that, then he relied on proof of a license. Surely the evidence stated in the case, of his repeatedly going on the land, and doing acts there with the knowledge of, and without any objection from the plaintiffs, is competent to be considered and weighed by the jury, as tending to show a license. He might say, " all the inhabitants of Hampton did these acts ; but if I cannot prove that they did so, and if I fail in showing a custom, at least when I did them myself the plaintiffs assented to them, and so I had a license."

The questions of custom and of license were distinct from each other. One of them might have been tried without the other ; and if the question of license only had been tried, there would have been no pretence of objection to Lamprey. By applying Lamprey's testimony to a point upon which it was not offered, and which it proves only incidentally, the plaintiffs raise their objection. Whether they can do this is extremely doubtful.

The general rule is well understood. If a customary right be claimed for the inhabitants of a place, an inhabitant cannot testify in support of the custom, for the verdict would be evidence in his favor. *Jacobson* v. *Fountain*, 2 Johns. 170 ; *Gould* v. *James*, 6 Cowen, 369 ; *Bent* v. *Baker*, 3 Term Rep. 33. But in *Bent* v. *Baker*, *Buller* and *Grose*, Justices, both say that if a witness be competent to answer *any* question, he ought not to be rejected generally. In the case of *Smith* v. *Carrington*, 4 Cranch, 62, it was held by *Marshall*, C. J., that a witness who was interested to diminish certain admitted items in the plaintiffs' account was still a competent witness to disprove other items. However, in *Gage* v. *Stewart*, 4 Johns. 293, it was held that a witness, interested in one of the articles for which the suit was brought, could not testify as to another article in which he was not interested.

But this objection is obviated by the plaintiffs' own evidence.

Their witnesses describe the places where the trespasses were committed, and Lamprey, the defendant's witness, agrees with them. In the case of *Wiggin* v. *Damrell*, 4 N. H. Rep. 69, the defendant contended that a certain deposition was improperly used by the plaintiff. But the Court held, that, under the circumstances, they would not inquire whether the deposition was properly admitted or not, as it appeared that the fact which the deposition was intended to prove had been virtually admitted by the defendant. In the present ·case, the fact which Lamprey testified to, had already been proved by the plaintiffs' witnesses, and we do not understand that the places where the alleged trespasses were committed were matters in dispute. The admission of Lamprey, then, affords no ground for setting aside the verdict.

No practice exists in this State, to our knowledge, of setting aside a verdict in part. Moreover, the case has been tried throughout without reference to any former trial. The plaintiffs must go on the ground that judgment should be rendered on the verdict returned in the former trial, which they say has not been set aside. But this motion should have been made before the present trial had been gone into ; and if the plaintiffs should lie by and wait the result of the trial, allowing the defendant, without any notice, to incur the expense of the proceeding, — then to permit them to take advantage of this motion, supposing their position to be tenable, would be extremely unjust. We are of opinion, therefore, that the plaintiffs' motion should be overruled, and that there should be .

*Judgment on the verdict.*